**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| LIGHTHOUSE BEHAVIORAL HEALTH SOLUTIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2022-0979-MTZ |
| MILESTONE ADDICTION COUNSELING, LLC, GITI MAYTON, EDWARD TURNER, JONATHAN BETHKE, and PATRICIA CHRISTIAN, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Date Submitted: March 1, 2023
Date Decided: May 17, 2023

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Marisa B. Miller, Kevin K. Chang, SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, San Diego, California, *Attorneys for Plaintiff.*

Sidney S. Liebesman, E. Chaney Hall, Nathaniel J. Klepser, FOX ROTHSCHILD LLP, Wilmington, Delaware; Erik J. Clark, ORGAN LAW LLP, Columbus, Ohio, *Attorneys for Defendants.*

**ZURN, Vice Chancellor.**

Milestone Addiction Counseling, LLC ("Milestone"), a mental health and substance use disorder treatment center, was acquired by plaintiff Lighthouse Behavioral Health Solutions, LLC ("Lighthouse"), a network of mental health and substance use disorder treatment centers. In the governing asset purchase agreement (the "APA"), Milestone made a series of promises that it cannot keep. Milestone promised to convey all its patient lists, charts, and records to Lighthouse. But federal regulations require patient consent to convey patient records: conveying all of Milestone's records to Lighthouse without obtaining consent from every patient risks criminal penalties. Milestone also promised to deliver the patient records and all documents reasonably required by applicable law. But the patient consents required to deliver those patient records are not within Milestone's control, and the patients do not have to give consent. And Milestone represented and warranted that it had taken all necessary actions to perform the agreement, that it was in compliance with all health care laws, and that consummating the transaction would not violate any applicable law. But Milestone has not and, as a practical matter, likely cannot obtain patient consents to transmit every record, and cannot transmit every record without consent without violating federal law.

Lighthouse has sued Milestone and its stakeholders for not keeping their promises, seeking specific performance of Milestone's promise to transfer all its

patient records. The defendants responded with a bevy of counterclaims. On the parties' cross-motions for summary judgment, I conclude that federal law requires obtaining patient consents before conveying Milestone's patient records to Lighthouse, and that Milestone promised to deliver patient consents to Lighthouse and so promised to obtain them.

Those conclusions do not answer all of the parties' questions. Neither party has established the consequences of Milestone having promised to deliver the patient consents necessary to convey all the patient records it sold to Lighthouse, when obtaining all the consents is likely impossible and conveying records without them is illegal. These issues will require further development.

## I. BACKGROUND[1]

Lighthouse operates a network of outpatient substance use disorder and mental health treatment facilities.[2] Milestone operated an outpatient substance use

---

[1] For the purposes of the pending Motions, I draw the relevant facts from the Verified Complaint, Docket Item ("D.I.") 1 [hereinafter "Compl."], as well as the admissions on file, together with any affidavits. *See* Ct. Ch. R. 56(c). Citations in the form of "Lighthouse OB —" refer to Plaintiff Lighthouse Behavioral Health Solutions, LLC's Opening Brief in Support of Motion for Summary Judgment, available at D.I. 30. Citations in the form of "Milestone OB —" refer to Defendants Milestone Addiction Counseling, LLC, Giti Mayton, Edward Turner, Jonathan Bethke, and Patricia Christian's Opening Brief in Support of its Motion for Partial Summary Judgment, available at D.I. 31. Citations in the form of "Milestone AB —" refer to Defendants Milestone Addiction Counseling, LLC, Giti Mayton, Edward Turner, Jonathan Bethke, and Patricia Christian's Answering Brief in Opposition to Lighthouse's Motion for Summary Judgment, available at D.I. 38. Citations in the form of "Lighthouse AB —" refer to Plaintiff Lighthouse Behavioral Health Solutions, LLC's Opposition to Defendants

2

disorder and mental health treatment facility until its assets were acquired by Lighthouse and its affiliate.[3] Individual defendant Giti Mayton was Milestone's majority stockholder, and individual defendants Edward Turner, Jonathan Bethke, and Patricia Christian were Milestone's minority stockholders (together, the "Owner Defendants," and together with Mayton and Milestone, "Defendants").[4] Lighthouse and its affiliate acquired a 100% interest in "Acquired Assets," defined as "all of [Milestone's] properties, rights, and assets, whether real or personal and whether tangible or intangible," other than certain excluded assets.[5]

The transaction was conducted in two parts. Lighthouse paid cash for a stake in the Acquired Assets defined as "Purchased Assets," in a transaction governed by the APA with Milestone, Mayton as the owner representative, and Turner, Bethke, and Christian as owners.[6] The Owner Defendants and Mayton contributed the remaining stake in the Acquired Assets to Lighthouse's affiliate in

---

Milestone Addiction Counseling, LLC, Giti Mayton, Edward Turner, Jonathan Bethke, and Patricia Christian's Motion for Partial Summary Judgment, available at D.I. 40.

[2] Compl. ¶ 13; Milestone OB at 9; Milestone AB at 1–2.

[3] Compl. ¶ 14; Milestone OB at 9; Milestone AB at 2, 6.

[4] Compl. ¶ 14, Milestone OB at 9.

[5] D.I. 29, Affidavit of Matthew J. Romeo in Support of Plaintiff Lighthouse Behavioral Health Solutions, LLC's Motion for Summary Judgment [hereinafter "Romeo Aff."] Ex. 1 [hereinafter "APA"] § 1.

[6] APA § 2.1.1.

3

exchange for equity, governed by a Contribution and Exchange Agreement.[7]  Both agreements are governed by Delaware law.[8]  Lighthouse also entered into a one-year employment agreement with Mayton, employing her as the Regional Clinical Director with managerial responsibilities over the former Milestone facility.[9]

In the APA, Milestone promised that "[a]t the Closing . . . [Milestone] will sell, transfer, convey, assign and deliver to [Lighthouse], and [Lighthouse] will purchase from [Milestone] an undivided interest in 53.98773% of the Acquired Assets (the 'Purchased Assets') . . . including . . . any and all patient lists, charts, records, ledgers, and information."[10]  The APA also provided that at closing, "[Milestone] and the Owners shall deliver, or cause to be delivered, as applicable, to [Lighthouse] . . . all right, title and interest in and to the Purchased Assets, including a Bill of Sale in the form attached hereto as Exhibit C and such other documents as may be reasonably required by applicable Law."[11]  Finally,

---

[7] *Id.* at Recitals; Romeo Aff., Ex. 2 [hereinafter "Contribution Agr."] at Recitals.

[8] APA § 8.9; Contribution Agr. § 18.

[9] Compl. ¶ 27.

[10] APA § 2.1.1(g).  Defendants do not dispute that APA Section 2.1.1, standing alone, facially obliges Milestone to convey its patient records to Lighthouse.  *See* Milestone OB at 10; Milestone AB at 42.  Section 2.1.1 is not a model of clarity in its use of "Acquired Assets" and "Purchased Assets," but the only reasonable interpretation is that it simultaneously enumerates Acquired Assets, identifies the partial stake in those assets that constitutes Purchased Assets, and binds Milestone to convey that stake and the enumerated assets that are not amenable to subdivision to Lighthouse.  It would be absurd to read Section 2.1.1 to bind Milestone to convey only a 54% stake in patient records.

[11] APA § 2.5.3(b)(v).

Milestone and the Owner Defendants made several representations and warranties, promising that their performance under the transaction documents was within the power of and authorized by Milestone and the Owner Defendants; that their performance would not violate any law, including health care laws; and that Milestone and its fiduciaries and agents were in compliance with health care laws, including those governing patient privacy and consent.[12]

After the transaction closed, a dispute arose between Lighthouse and Mayton concerning Lighthouse's access to Milestone's patient records. Milestone maintained its patient records on a customer relationship management and electronic health record database administered by BestNotes.[13] After closing, Milestone remained the account holder and system administrator for the BestNotes account.[14] Mayton, as Milestone's owner representative, controlled access to the account before, during, and after her employment at Lighthouse.[15] Some Lighthouse employees had limited access during due diligence and for a brief period after closing, but on August 5, 2022, Mayton terminated all Lighthouse

---

[12] *Id.* §§ 3.2, 3.3, 3.21.1, 4.1, 4.2; *id.* § 1; Contribution Agr. § 3(a).

[13] Compl. ¶ 29; D.I. 41, Affidavit of Tia Moretti in Support of Plaintiff Lighthouse Behavioral Health Solutions, LLC's Opposition to Defendants Milestone Addiction Counseling, LLC, Giti Mayton, Edward Turner, Jonathan Bethke, and Patricia Christian's Motion for Partial Summary Judgment [hereinafter "Moretti Aff."] ¶ 5.

[14] Compl. ¶ 29.

[15] *Id.*; Moretti Aff. ¶ 5.

employees' access to the BestNotes patient records.[16] The parties dispute why Mayton did so, and in particular whether Lighthouse told her to do so.[17] In the weeks that followed, the parties sparred over Lighthouse's access. Mayton maintained that granting full access to the patient records violated federal law regulating disclosure of substance use disorder patient records, codified at 42 C.F.R. Part 2 ("Part 2").[18] Lighthouse terminated Mayton's employment effective October 20, 2022.[19]

Lighthouse filed its complaint on October 28, 2022. Count I, against all Defendants, seeks specific performance of APA Section 2.1.1(g), requiring Milestone to convey "any and all patient lists, charts, records, ledgers and information" to Lighthouse. To the extent that federal law requires patient consent to convey patient records, Lighthouse further asserts that Milestone must obtain those consents under APA Section 2.5.3(b)(v)'s obligation to deliver "all right, title and interest in and to the Purchased Assets, including a Bill of Sale in the form attached hereto as Exhibit C and such other documents as may be reasonably

---

[16] Lighthouse OB at 13; Moretti Aff. ¶ 7.

[17] Lighthouse asserts that Mayton terminated access because of a dispute with Lighthouse about her employment. Compl. ¶ 48. Milestone contends that Lighthouse President Tia Moretti ordered Mayton to terminate Lighthouse employee access to BestNotes. Milestone AB at 8. In an affidavit, Moretti explains that she never directed Mayton to entirely terminate Lighthouse's BestNotes access. *See* Moretti Aff. ¶ 6.

[18] Compl. ¶ 32; Milestone AB at 9–10, 12–13; *see* 42 C.F.R. § 2.1 et seq. (2022).

[19] Compl. ¶ 32.

required by applicable Law."[20]  Count II reiterates the alleged breaches of contract underlying Count I against all Defendants, and Count III claims Mayton, as "key managerial personnel," breached her fiduciary duties to Lighthouse.[21]

Defendants answered the complaint, asserting among others the affirmative defense of illegality "to the extent any agreement requires the disclosure of Patient Record Assets to Lighthouse without additional patient consent compliant with applicable law."[22]  Defendants also filed counterclaims.  Counterclaim Count I seeks nine declaratory judgments establishing the parties' rights and obligations with respect to obtaining patient consent for the transfer of patient records. Counterclaim Count II seeks specific performance compelling Lighthouse (1) to obtain patient consent before Milestone's transfer of patient records, (2) to allow Milestone to retain copies of patient records, and (3) to promptly forward requests for patient records to Milestone.  Counterclaim Count III alleges a breach of the APA arising out of Lighthouse's failure to perform those same obligations.

After filing the complaint, Lighthouse sent Milestone a proposed patient consent form.[23]  The parties negotiated a form, and eventually—once before the

---

[20] APA § 2.5.3(b)(v).

[21] Compl. ¶ 59.

[22] D.I. 23 at 31.

[23] Milestone OB at 17–19, 21; D.I. 51, Affidavit of Tara Bradford in Support of Plaintiff Lighthouse Behavioral Health Solutions, LLC's Motion for Summary Judgment ¶¶ 4, 9, 11.

hearing on this matter and then in bulk afterwards—Lighthouse obtained patient consents to transfer records and Milestone transferred those records.[24]

On January 18, 2023, before conducting any discovery, Lighthouse and Defendants moved for partial summary judgment.[25] Lighthouse seeks partial summary judgment on its breach of contract claim, asserting Defendants "owed an enforceable obligation to convey the [p]atient [r]ecord [a]ssets under the APA and related agreements," and that they breached those obligations;[26] Lighthouse also seeks summary judgment on its request for specific performance of that obligation. I read Defendants' briefing to seek partial summary judgment on two discrete legal issues: whether Part 2 "requires written consent from patients identifying Lighthouse as the recipient before Milestone can transfer patient records," and "whether the APA requires Milestone to transfer patient records without consent."[27] The parties briefed the motions and I heard argument on March 1, 2023.[28]

This opinion first addresses how Part 2 governs the flow of patient records from Milestone to Lighthouse, and then whether the APA requires either party to

---

[24] Milestone OB at 19–20.

[25] D.I. 28; D.I. 31.

[26] Lighthouse OB at 37–38; Lighthouse AB at 17.

[27] Milestone OB at 22.

[28] D.I. 50; D.I. 53 [hereinafter "Hr'g Tr."].

obtain patient consent. It ends with questions about how those conclusions affect Defendants' contractual promises and obligations.

## II. ANALYSIS

A motion for summary judgment will be granted where the record before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[29] Summary judgment may only be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[30] When the movant carries that burden, the burden shifts to the nonmoving party "to present some specific, admissible evidence that there is a genuine issue of fact for a trial."[31] On any application for summary judgment, "the court must view the evidence in the light most favorable to the non-moving party."[32] "The Court will decline to enter summary judgment when the record indicates a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the

---

[29] Ct. Ch. R. 56(c).

[30] *Twin Bridges Ltd. P'ship v. Draper*, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c), and *AHS N.M. Hldgs., Inc. v. Healthsource, Inc.*, 2007 WL 431051, at *3 (Feb. 2, 2007)).

[31] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009) (internal quotation marks omitted) (quoting *Watson v. Taylor*, 829 A.2d 936, 2003 WL 21810822, at *2 (Del. Aug.4, 2003) (TABLE)).

[32] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

application of law to the circumstances."[33]  When presented with cross-motions for summary judgment, the Court must examine each motion separately.[34] Additionally, "[t]he mere filing of a cross motion for summary judgment does not serve as a waiver of the movant's right to assert the existence of a factual dispute as to the other party's motion."[35]  "[A] party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party."[36]

### A. Part 2 Requires Patient Consent To Convey Milestone Patient Records To Lighthouse.

Part 2 restricts the disclosure and use of substance use disorder patient records maintained by substance use disorder treatment or rehabilitation programs.[37]  Part 2 regulations are "intended to ensure that a patient receiving treatment for a substance use disorder in a part 2 program is not made more vulnerable by reason of the availability of their patient record than an individual

---

[33] *In re Tesla Motors, Inc. S'holder Litig.*, 2020 WL 553902, at *3 (Del. Ch. Feb. 4, 2020) (internal quotation marks and citations omitted).

[34] *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 166–67 (Del. Ch. 2003) (citing *Empire of Am. Relocation Servs., Inc. v. Com. Credit Co.*, 551 A.2d 433, 435 (Del. 1988)).

[35] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

[36] *Id.*

10

with a substance use disorder who does not seek treatment."[38]  Accordingly, Part 2 regulations "prohibit the disclosure and use of patient records unless certain circumstances exist."[39]  Even if circumstances permitting disclosure without patient consent exist, the regulations "do[] not compel disclosure" under any circumstances.[40]  And "[a]ny disclosure made under the regulations in this part must be limited to that information which is necessary to carry out the purpose of the disclosure."[41]  Violating Part 2 carries criminal penalties.[42]  I read Part 2 to compel a conservative approach in deciding that an exception to confidentiality applies.

Lighthouse contends Milestone can transfer all of its patient records to Lighthouse without patient consent because Lighthouse exercises "direct administrative control" over the former Milestone program, and therefore falls under an exception to nondisclosure embodied in Part 2's Section 2.12(c)(3).[43]  Defendants dispute that Lighthouse assumed "direct administrative control" of Milestone's program.  Instead, Defendants contend Lighthouse acquired Milestone,

---

[37] 42 C.F.R. § 2.2(a) (2022).

[38] *Id.* § 2.2(b)(2).

[39] *Id.* § 2.2(b)(1).

[40] *Id.*

[41] *Id.* § 2.13(a).

[42] *Id.* § 2.3.

[43] Lighthouse OB at 20.

11

and so Section 2.19 requires patient consent to transfer patient records.[44]   The

operative provisions follow.

> Section 2.12(c)(3):  The restrictions on disclosure in the regulations in this part do not apply to communications of information between or among personnel having a need for the information in connection with their duties that arise out of the provision of diagnosis, treatment, or referral for treatment of patients with substance use disorders if the communications are . . . (ii) Between a part 2 program and an entity that has direct administrative control over the program.

Pursuant to federal guidance from the Substance Abuse and Mental Health

Services Administration, one example of "direct administrative control" under

Section 2.12(c)(3) is "[w]hen a substance use disorder unit is a component of a

larger behavioral health program or of a general health program."[45]

> Section 2.19:  If a part 2 program discontinues operations or is taken over or acquired by another program, it must remove patient identifying information from its records or destroy its records, including sanitizing any associated hard copy or electronic media, to render the patient identifying information non-retrievable in a manner consistent with the policies and procedures established under § 2.16, unless . . .  The patient who is the subject of the records gives written consent (meeting the requirements of § 2.31) to a transfer of the records to the acquiring program or to any other program designated in the consent (the manner of obtaining this consent must minimize the likelihood of a disclosure of patient identifying information to a third party) . . . .[46]

---

[44] Milestone AB at 21–22.

[45] Substance Abuse & Mental Health Servs. Admin., Frequently Asked Questions: Applying the Substance Abuse Confidentiality Regulations to Health Information Exchange (HIE), at 5 (2010), https://www.samhsa.gov/sites/default/files/faqs-applying-confidentiality-regulations-to-hie.pdf.

[46] 42 C.F.R. § 2.19(a)(1) (2022).

Whether Lighthouse assumed direct administrative control over Milestone's program is a factual question. For either side to prevail on summary judgment, it must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[47] Defendants contend Lighthouse acquired Milestone's program pursuant to the APA and their relationship is therefore governed by Part 2's Section 2.19. Defendants point to a provision in the APA providing that "[f]ollowing the Closing Date, [Milestone] will cease to maintain the business as a going concern and shall cease to operate the Business."[48] For its part, Lighthouse argues it exercises "direct administrative control" over the treatment program Milestone formerly operated based on the undisputed facts that the program has the same personnel, the same facility, the same phone number and contact information, and provides the same services as it did before the APA was executed.[49] Lighthouse asserts it has administrative control over the program in this case because Lighthouse manages staff training, funding, and decides what services to provide.[50]

Defendants have met their burden by pointing to the clear terms of the APA: they show Lighthouse's relationship to the program is that of an acquirer under

[47] Ch. Ct. R. 56(c).

[48] APA § 6.8; Milestone AB at 6–7.

[49] Romeo Aff. ¶¶ 10–14.

[50] Lighthouse OB at 11–12; *see also* Lighthouse AB at 11–16.

13

Section 2.19, and not an administrator addressed by Section 2.12(c)(3). Lighthouse acquired the program, and Milestone promised to stop operating it. Lighthouse is not in administrative control of a program operated by another. The facts that Lighthouse points to, indicating that much about the program has remained the same under Lighthouse's control, support the conclusion that Lighthouse is an acquirer, and fail to generate a genuine issue of material fact.

Even if Lighthouse had shown that Section 2.12(c)(3)'s exception for administrative control governed its exchange of patient records with Milestone, that section is limited in scope and does not support conveying "any and all" Milestone patient records to Lighthouse as an enterprise.[51] Section 2.12(c)(3) of Part 2 does not permit Lighthouse to obtain, without patient consent, all records for every former Milestone patient for use throughout Lighthouse.[52] By its own terms, Section 2.12(c)(3) limits disclosure of communications without patient consent to communications between personnel in administrative control "having a need for

---

[51] APA § 2.1.1(g).

[52] *See* Hr'g Tr. 24–25 ("ATTORNEY MILLER: 'All' means all. '[A]ny and all patient lists, charts, records, ledgers and information,' not just patient lists, charts, records, ledgers and information for those patients who come into Lighthouse after the closing date. That is not what the contract says."); *see also id.* at 25 ("THE COURT: How does that fit with, even under your view, if this falls under the exception to Part 2, given that the entity with direct administrative control still has to have a need for the information in connection with their duties that arise out of the provision of diagnosis, treatment, or referral? ATTORNEY MILLER: Any time a -- well, first, patient outreach. So patients who do not come in to Lighthouse aren't necessarily all of the patients who Lighthouse can serve.").

14

the information in connection with their duties that arise out of the provision of diagnosis, treatment, or referral for treatment of patients with substance use disorders."[53] In other words, in the context of administrative control, Part 2 permits the transmittal of patient records without consent where specific administrative personnel "need" the information in connection with their patient care duties.

Lighthouse seeks more than the Milestone records its personnel needs to care for patients. It seeks all of Milestone's records to be given to Lighthouse as an enterprise, in order "to provide outreach to the patient population,"[54] i.e., for marketing purposes. Section 2.12(c)(3) does not support such a broad disclosure, or any disclosure for "outreach" purposes. This restrictive reading of Section 2.12(c)(3) is reinforced by Part 2's general interpretative provision requiring that "[a]ny disclosure made under the regulations in this part must be limited to that information which is necessary to carry out the purpose of the disclosure."[55] And transmitting records of former patients without their consent for reasons other than their own care needs would violate Part 2's explicit "inten[t] to ensure that a

---

[53] 42 C.F.R. § 2.12(c)(3) (2022).

[54] Hr'g Tr. at 21 ("ATTORNEY MILLER: We provided equity in the new entity in exchange for these records. We need these records in order to provide effective care to the patient population. We also need these records to provide outreach to the patient population.").

[55] 42 C.F.R. § 2.13(a) (2022).

15

patient receiving treatment for a substance use disorder in a part 2 program is not made more vulnerable by reason of the availability of their patient record than an individual with a substance use disorder who does not seek treatment."[56]  Section 2.12(c)(3) does not permit Milestone to convey "any and all patient lists, charts, records, ledgers, and information" to Lighthouse as an enterprise without patient consent.

Based on the foregoing, Defendants' motion for partial summary judgment is **GRANTED IN PART**:  the conveyance of Milestone's patient records to Lighthouse is governed by Section 2.19 of Part 2.

### B. Milestone Promised To Deliver Patient Consents To Lighthouse.

Having determined that patient consent is required to transfer Milestone's patient records to Lighthouse according to Part 2's Section 2.19, I now turn to the parties' disagreement as to who, if anyone, was required to obtain patient consents. Lighthouse argues Section 2.5.3(b)(v) of the APA imposed that obligation on Milestone:  I agree.  Defendants contend that mutual further assurances and cooperation clauses require Lighthouse to obtain patient consents:  I do not read them that way.

---

[56] *Id.* § 2.2(b)(2).

16

## 1. APA Section 2.5.3(b)(v)

Lighthouse seeks a partial summary judgment to the effect that, if patient consent is required for the transfer of Milestone's patient records, Section 2.5.3(b)(v) of the APA imposes the obligation to obtain those consents on Milestone.[57]  That section provides that "[Milestone] and the Owners shall deliver, or cause to be delivered, as applicable, to [Lighthouse] . . . all right, title and interest in and to the Purchased Assets, including a Bill of Sale in the form attached hereto as Exhibit C and such other documents as may be reasonably required by applicable Law."[58]  The APA defines "Law" to include "Health Care Laws," which is in turn defined to include any law relating to "medical privacy and security, patient confidentiality [and] informed consent."[59]  The record does not include the Bill of Sale.

Defendants respond that because Part 2 regulations "do not require disclosure under any circumstances,"[60] patient consents to support disclosure are not documents that are "reasonably required" within the meaning of Section

---

[57] Lighthouse OB at 5, 15, 25.

[58] APA § 2.5.3(b)(v).

[59] *Id.* § 1.

[60] 42 C.F.R. § 2.2(b)(1) (2022).

2.5.3(b)(v) of the APA.[61] Defendants also assert that the definition of "Health Care Law" does not mention Part 2 and thus, arguably, excludes Part 2.[62]

The definition of Health Care Law does not exclude Part 2 just because it does not specifically enumerate it: it includes "all Laws and all . . . regulations . . . in each case relating to health care providers or facilities, including any Law relating to . . . medical privacy and security, patient confidentiality, [and] informed consent."[63] And certainly, as Defendants themselves argued, Part 2 "require[s]" consents to convey Milestone's patient records to Lighthouse. In order for Milestone to convey "all right, title and interest in and to" its patient records as part of the Purchased Assets, Part 2 requires consent forms. The consent forms fall under the documents Milestone promised to deliver to Lighthouse in Section 2.5.3(b). By promising to deliver the consent forms to Lighthouse, or cause them to be delivered, Milestone necessarily promised to obtain or request them: Milestone cannot deliver something it does not have, and cannot cause to be delivered something it has not requested to be sent.

That patients are not required to give consents may make it difficult for Milestone to perform its promise to deliver the consent forms Part 2 requires to convey all of Milestone's patient records. But patient autonomy does not change

---

[61] Milestone AB at 25 (emphasis omitted).

[62] *See* Milestone AB at 44–45.

18

the fact that Part 2 requires patient consents to convey right, title, and interest in patient records, and so Section 2.5.3(b)(v) requires Milestone to deliver those consents to Lighthouse.  On this point, Lighthouse's motion for partial summary judgment is **GRANTED**.

### 2.  APA Sections 6.3 and 6.7.3(b)

Defendants argue the APA imposes a condition precedent on delivering patient records, requiring that Lighthouse first obtain patient consent before Milestone must convey its records.[64]  Defendants point to Section 6.3 of the APA, a provision titled "Further Assurances" that states that "upon the request of either the Owner Representative or [Lighthouse], each of the parties hereto shall do, execute, acknowledge, and deliver all such further . . . papers as may be reasonably required or appropriate to carry out and/or evidence the Contemplated Transactions."[65]  Defendants argue this provision creates a condition precedent whereby Lighthouse must provide patient consents before Milestone can fulfill its obligation to deliver patient records.[66]  Lighthouse disputes this interpretation.[67]

"A condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or a contractual

---

[63] APA § 1.

[64] Milestone AB at 26–27, 44.

[65] APA § 6.3.

[66] Milestone AB at 26–27; Milestone OB at 41–43.

duty arises."[68] "Because of the risk of forfeiture, conditions are disfavored and the law has evolved to protect parties from forfeitures in certain instances."[69] Accordingly, "[w]hether the agreement establishes a condition is a question of intent to be drawn from the agreement's plain, unambiguous language. Words and phrases such as 'if,' 'provided that,' and 'on the condition that' generally indicate the parties have created a condition."[70] APA Section 6.3 contains no such plain, unambiguous language suggesting that the parties have created a condition precedent. The provision does not describe an action that must be performed or event that must happen before a contractual right accrues.

Rather, Section 6.3 is both titled as, and reads as, a further assurances provision. Further assurances provisions are a "mechanism for confirming existing rights and obligations," but they cannot "be used to create new contractual commitments or to resolve ambiguities."[71] They are "catchall contract provision[s] by which a party, after making a precise commitment to perform in some manner, makes a vague, more general commitment to take other actions that are incidental

---

[67] Lighthouse AB at 22–26.

[68] 13 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 38:7 (4th ed. 1993 & 2023 update).

[69] *Ainslie v. Cantor Fitzgerald, L.P.*, 2023 WL 106924, at *11 (Del. Ch. Jan. 4, 2023) (collecting cases).

[70] *Id.* at *10 (footnotes omitted).

[71] *Hawkins v. Daniel*, 273 A.3d 792, 828–29 (Del. Ch. 2022) (discussing an "Additional Documents Clause," which the Court likens to a further assurances clause).

20

to, and necessary for, the performance of the core commitment."[72]   Such a provision does not create a new obligation, much less one that serves the singular function of a condition precedent.

APA Section 6.3 does not impose a new obligation on Lighthouse to obtain patient consents, particularly given that Section 2.5.3(b)(v) imposed that obligation on Milestone.  And Section 6.3 provides that "at the request of *either* the Owner Representative or [Lighthouse], *each of the parties*" shall deliver the papers at issue.[73]   Either may make such a request:  nothing in this language imposes a unilateral obligation on Lighthouse.

Defendants similarly point to APA Section 6.7.3(b), a cooperation provision, to impose the obligation to obtain patient consents on Lighthouse.  Section 6.7.3(b) provides that "[Lighthouse], [Milestone], and the Owners will cooperate fully, as and to the extent reasonably requested by the other party, in connection with any health care matter or in connection with compliance with any Health Care Law relating to the . . . Purchased Assets."[74]   Like the further assurances provision, this cooperation provision does not contain the language necessary to impose a

---

[72] *True N. Commc'ns Inc. v. Publicis S.A.*, 711 A.2d 34, 39–40 (Del. Ch. 1997) (describing language stating a party "shall if reasonably requested provide such other information as is necessary to ensure that the transaction qualifies for [a certain] accounting treatment" as a "further assurances clause").

[73] APA § 6.3 (emphasis added).

[74] *Id.* § 6.7.3(b).

condition precedent of obtaining patient consents, or create a new contractual commitment. And like the further assurances provision, it is exercisable by request of either party, and does not impose any obligation on Lighthouse alone.

Neither the further assurances clause nor the cooperation clause imposes the obligation to obtain patient consents on Lighthouse. On this point, Defendants' motion is **DENIED**.

### C. The Parties Have Not Demonstrated Whether Milestone Is Excused From Conveying Patient Records To Lighthouse Without Consent.

I have interpreted Part 2 to require patient consent to convey Milestone's patient records to Lighthouse, or risk criminal penalties.[75] Milestone promised to convey all its patient records to Lighthouse. Milestone also promised to convey all documents required by patient privacy laws to Lighthouse, including the patient consents required to convey patient records. Of course, the decision of whether to give consent rests with each patient. Yet Defendants promised Milestone could perform its promise to convey all its medical records without violating any laws. Defendants made promises that may prove difficult to keep.[76] "[I]t is not the job of

---

[75] 42 C.F.R. § 2.3 (2022).

[76] As Defendants pointed out in their briefing, APAs in similar transactions have acknowledged the applicability of Part 2 and specifically accounted for those requirements in provisions relating to the transfer of patient records. Milestone AB at 20–21.

a [Delaware] court to relieve sophisticated parties of the burdens of contracts they wish they had drafted differently but in fact did not."[77]

I turn to the parties' positions on the enforceability of Milestone's promise to convey all its records to Lighthouse if, as seems likely, Milestone cannot obtain consent from all its patients. Lighthouse seeks summary judgment on the basis that Defendants "owed an enforceable obligation to convey the Patient Record Assets under the APA and related agreements," that they breached that obligation, and that they should be ordered to specifically perform that obligation.[78] Defendants have asserted an illegality defense, and on summary judgment press that any contractual requirement to immediately provide patient records without consent is unenforceable.

Lighthouse has not engaged with the idea that Milestone's obligation to convey all patient records might be unenforceable. Lighthouse has held fast to its reading of Part 2, which as explained I do not agree with. Lighthouse has not shown it is entitled to summary judgment on the issues of breach and the availability of specific performance under this opinion's interpretation of Part 2 and its implications on Milestone's obligations to perform under Section 2.1.1 of the APA.

---

[77] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006).

[78] Lighthouse OB at 37–38; Lighthouse AB at 17. I note that the obligation under Section 2.1.1 binds the "Company," not any other defendant. APA § 2.1.1.

For their part, Defendants have fallen short of meeting their burden to show they are entitled to judgment as a matter of law on their illegality defense. Illegality is an affirmative defense on which Defendants bear the burden of proof.[79] Defendants' brief in support of judgment in their favor gave illegality very quick treatment: four paragraphs and a quote that, "In general, Delaware law prohibits courts from enforcing illegal agreements."[80] That is certainly true in general, but the devil is in the details.

> Defendants are correct in their recitation of the general proposition.
>
> Under Delaware law, it is against the public policy of this State to permit its courts to enforce an illegal contract prohibited by law. Ordinarily, we think, when such is the fact, neither party has a remedy to any extent against the other. Moreover, this Court has held that a court may never enforce agreements void *ab initio*, no matter what the intentions of the parties. Thus, when an agreement is void *ab initio* as against public policy, the courts typically will not enforce a remedy to any extent against either party. In other words, the courts typically will leave the parties where they find them.[81]

It follows that "specific performance will be denied if it appears that the agreement sought to be enforced is illegal because it involves a violation of statutory

---

[79] Ct. Ch. R. 8(c); *Rothenberg v. Santa Fe Pac. Corp.*, 1992 WL 111206, at *4 (Del. Ch. May 18, 1992) (citing 31A C.J.S. *Evidence* § 104(b) (1964), and 29 Am. Jur. 2d *Evidence* § 129 (1967)).

[80] Milestone OB at 44–46 (quotation marks omitted) (quoting *Balooshi v. GVP Glob. Corp.*, 2022 WL 576819, at *11 (Del. Super. Feb. 25, 2022), *aff'd*, 285 A.3d 839, 2022 WL 5052721 (Del. 2022) (TABLE)). Milestone's brief opposing Lighthouse's motion for summary judgment briefing also gave illegality very quick treatment. Milestone AB at 24, 37.

provision or rule of law."[82]  Delaware courts have refused to "use the power

entrusted it by the people of Delaware to compel specific performance of an aspect

of an illegal contract."[83]

But whether a contract is void because it, or a term within it, conflicts with a

statute is more nuanced than the general proposition Defendants offer.  "[C]ourts

are averse to voiding agreements on public policy grounds unless their illegality is

clear and certain.  Furthermore, courts exercise this authority with caution, and

only in cases that are free from doubt."[84]  "Contracts may be unenforceable if they

are either illegal per se or violate public policy."[85]  While authority states that a

contract is illegal per se if it "violates the explicit mandate of a statutory

---

[81] *Geronta Funding v. Brighthouse Life Ins. Co.*, 284 A.3d 47, 61 (Del. 2022) (footnotes, citations, and quotation marks omitted).

[82] 81A C.J.S. *Illegality* § 44 (2023); *see also* 25 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 67.3 (4th ed. 1993 & 2023 update) ("If an agreement is illegal or opposed to public policy, specific performance is clearly improper . . . .").

[83] *Lynch v. Gonzalez*, 2020 WL 4381604, at *44 (Del. Ch. July 31, 2020) (citing *Morente v. Morente*, 2000 WL 264329, at *3 (Del. Ch. Feb. 29, 2000)), *aff'd*, 253 A.3d 556 (Del. 2021).

[84] *Bennett v. Lally*, 2014 WL 4674623, at *4 (Del. Ch. Sept. 5, 2014) (internal quotations and citations omitted).

[85] *Bunting v. Citizens Fin. Gp.*, 2007 WL 2122137, at *5 (Del. Super. June 29, 2007) (citations omitted).

provision," that same authority goes on to consider a multitude of factors to determine if that same violative contract is unenforceable.[86]

> To determine if a contract, which violates the terms of a statute, should be unenforceable as a matter of public policy, the Court must consider the statute's language, nature, object, purpose, subject matter, reach, the wrong or evil which the law seeks to remedy or prevent, the class of persons sought to be controlled, the legislative history and the effects of holding a contract in violation of the law invalid as well as balancing the interest in enforcement of the contract against the law's underlying public policy.[87]

And Delaware's prohibition on enforcing an illegal contract contains three exceptions: if denial of restitution would cause disproportionate forfeiture; if both parties are excusably ignorant and one party is less in the wrong; and if the party seeking restitution did not engage in serious misconduct and either withdrew before the improper purpose was achieved, or allowance of the claim would end a continuing situation that is contrary to the public interest.[88]

The enforceability of an illegal contract becomes more complex when dealing with an illegal term within an otherwise legal agreement.

---

[86] *Preferred Fin. Servs., Inc. v. A&R Bail Bonds LLC*, 2019 WL 315331, at *5 (Del. Super. Jan. 23, 2019).

[87] *Bunting*, 2007 WL 2122137, at *5 (citing *Bank of Baltimore v. Auto's Plus*, 1994 WL 19937, *2 (Del. Super. Jan. 4, 1994)); *see also id.* (considering a defense of illegality to breach of an implied contract not to fire a notary for notarizing documents inconsistently with notary requirements); *Preferred Fin. Servs., Inc. v. A&R Bail Bonds LLC*, 2018 WL 587023, at *6–7 (Del. Super. Jan. 26, 2018) (considering a contractual arrangement designed to circumvent statutes regulating the bail bond business); *Della Corp. v. Diamond*, 210 A.2d 847, 849 (Del. 1965) (considering a contractual arrangement to circumvent a liquor licensing statute).

In that case, the contract may be divisible by its lawful and unlawful terms and so potentially enforceable on its lawful terms. In determining whether a partially illegal contract is enforceable on its lawful terms, two preliminary issues must be resolved.

First, the Court must determine whether the contract's illegal terms are so "central to the parties' agreement" that the plaintiff cannot prove its breach-of-contract claim without them. If they are, then the contract is void despite any lawful terms expressed therein.

Second, if the plaintiff can sustain its claim on the contract's lawful terms alone, then the Court must determine whether the parties intended the lawful terms to be "severable," *i.e.*, enforced notwithstanding partial avoidance. . . . If the parties expressed in the contract directly an expectation of severability—*e.g.*, included an unambiguous severability clause—then the Court may sever and enforce the lawful terms.[89]

Defendants have not engaged with the nuances of declaring a contract void because performing would violate the terms of a statute. Nor have they engaged with the nuances of voiding one term of an otherwise valid agreement, other than to point out the APA's severability provision.[90] Defendants have not met their burden to demonstrate they are entitled to a judgment as a matter of law.[91]

---

[88] *Geronta Funding*, 284 A.3d at 68–71.

[89] *Balooshi*, 2022 WL 576819, at *11 (footnotes, citations, and quotation marks omitted); *accord Bennett*, 2014 WL 4674623, at *4–5.

[90] APA § 8.8.

[91] *See Tafeen v. Homestore, Inc.*, 2004 WL 1043721, at *1 (Del. Ch. Apr. 27, 2004) ("It is well settled that where the opponent of summary judgment has the burden of proof at trial, he must show specific facts demonstrating a plausible ground for his claim, and cannot rely merely upon allegations in the pleadings or conclusory assertions in affidavits in order to avoid summary judgment being granted in favor of the proponent of the motion." (internal quotations, alterations, and citations omitted)).

## III.   CONCLUSION

In sum, Part 2 requires patient consent for the transfer of Milestone's patient records to Lighthouse.  On this issue, Lighthouse's motion for summary judgment is **DENIED** and Defendants' is **GRANTED**.  Milestone promised to give the required patient consents to Lighthouse, thereby also promising to obtain them.  On this issue, Lighthouse's motion for summary judgment is **GRANTED** and Defendants' is **DENIED**.  And Defendants' motion is **DENIED** as to the enforceability of Milestone's obligation to convey its patient records without patient consent.  I ask the parties to submit a stipulated order implementing these decisions, by count and counterclaim to the extent possible.

Despite having stipulated to filing cross-motions, the parties talked past each other in briefing.  The foregoing discussion has left some questions unanswered, particularly as to the consequences of Defendants' representations and warranties and the consequences of my interpretation of Part 2 on Milestone's obligations under APA Sections 2.1.1 and 2.5.3(b).  The parties appear to have anticipated some loose ends, having stipulated to filing additional motions for summary judgment if this opinion did not fully resolve the matter.[92]  There is no right to a summary judgment; the corollary to that rule is that there is also no right to

---

[92] D.I. 22 ¶ 5.

28

successive attempts at summary judgment.[93]  I ask the parties to confer on an efficient way to resolve any remaining issues.  If the path is to be motion practice, I ask the parties to submit a joint letter seeking leave and outlining the issues to be briefed and the specific judgments sought.  If the path is to be trial, I ask the parties to submit a scheduling order.

---

[93] *See Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002) (citations omitted).